**Opinion issued July 6, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00300-CR

_____

## EX PARTE CARLOS REFUGIO GOMEZ-RODRIGUEZ,

### Appellant

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 10-DCR-053566

## MEMORANDUM OPINION

Appellant Carlos Refugio Gomez-Rodriguez appeals from the denial of his post-conviction application for a writ of habeas corpus, which he filed pursuant to Article 11.072 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 11.072. In two issues, appellant contends that he received ineffective assistance of counsel at his plea hearing because his counsel failed to (1) "properly advise

[appellant] concerning the immigration consequences of his plea" or (2) "raise a valid suppression issue shown on the face of the offense report."

We affirm.

## Background

On September 14, 2009, appellant was arrested for public intoxication, and a subsequent search of his person revealed a clear plastic baggie containing cocaine. The offense report explains that "officers assigned to the south west hot spot detail observed loud music from a vehicle at 500 blk of Ridgevan at 2:41 HRS. Officers observed the suspect to be intoxicated and to have an open container in the street. Officers arrested the suspect for a PI search incident to arrest[,] officers located a clear plastic baggie that contained powder cocaine. Suspect was arrested for PCS." The offense report also noted "the listed location 5000 Ridgevan to be a residential street located in Houston Texas[,]" and stated that the "officer observed [the] suspect to be intoxicated and in the middle of the street."

On March 11, 2010, appellant pleaded guilty to possession of a controlled substance, the trial court deferred an adjudication of guilt, and, pursuant to an agreed punishment recommendation, placed appellant under community supervision for two years.

On April 10, 2012, after appellant successfully completed the terms of his deferred adjudication probation, the trial court dismissed the criminal proceeding against him.

On November 12, 2021, appellant filed an application for writ of habeas corpus, contending that he received ineffective assistance of counsel at his plea hearing. Specifically, appellant alleged that his plea was involuntary because defense counsel did not (1) inform him about the deportation consequences of his plea as required by *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) or (2) file a motion to suppress appellant's warrantless arrest for public intoxication, which he claims was not supported by probable cause.

In support of his application, appellant submitted his own affidavit, in which he swore that he "was standing in the parking area in front of [his] uncle's house." He also submitted the affidavit of his uncle, Alfonso Aguilar, who testified that appellant was "just outside in the parking lot listening to music," and that appellant "was not in the middle of the street when I saw the police detain him." Juan Barron, appellant's friend, also testified by affidavit that the men "were not in the street[] but were in the parking lot that is located in front of some apartment homes there."

Appellant's defense counsel also testified by affidavit that when he asked appellant where he was standing when police arrested him, "[h]e responded that he was in the street[,]" and that appellant told defense counsel "that he was standing in

3

the street, he had been drinking beer for several hours, [and that] he had consumed cocaine." This version of events suggested to defense counsel that the police had probable cause to detain appellant. Appellant also told defense counsel that there were no other witnesses to his arrest.

On March 23, 2022, the trial court signed findings of fact and conclusions of law, in which she (1) found the information in defense counsel's affidavit to be "true and credible," (2) noted that "[appellant] admitted to [defense counsel] about being in the street when the police arrived on the scene," and (3) that appellant "responded that there were no witnesses" to his encounter with police. Based on these findings of fact and conclusions of law, the trial court denied appellant's request for habeas corpus relief and this appeal followed.

## Analysis

### *Standard of Review and Applicable Law*

Code of Criminal Procedure Article 11.072 is "the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution" in cases involving an individual who is serving a term of community supervision. *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008). Applicants for post-conviction habeas corpus relief must prove their claims by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016).

4

In a post-conviction writ application filed pursuant to Article 11.072, the trial judge is the sole finder of fact. *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). In this setting, we afford almost total deference to a trial court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor. *Id.* If, however, the trial court's determinations are questions of law, or mixed questions of law and fact that do not turn on an evaluation of witnesses' credibility and demeanor, then we review them de novo. *Ex parte Weinstein*, 421 S.W.3d 656, 664 (Tex. Crim. App. 2014).

In reviewing the trial court's ruling on a habeas claim, we review the record evidence in the light most favorable to the trial court's ruling and must uphold the trial court's ruling absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016).

To demonstrate entitlement to post-conviction relief based on ineffective assistance of counsel, an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome. *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984). In the context of a collateral challenge to a guilty

plea, the focus of the prejudice inquiry is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process," and on whether a defendant has shown that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

*Ineffective Assistance Under Padilla*

The Sixth Amendment right to effective assistance of counsel requires counsel to correctly advise non-citizen clients about potential immigration law consequences, including deportation, exclusion from admission, and denial of naturalization. *Padilla*, 559 U.S. at 366–67. If a criminal defendant has committed an offense that would trigger mandatory deportation[1] upon conviction, counsel must correctly advise his client that the client faces mandatory deportation upon conviction or even placement on deferred adjudication. *Id*. at 369; *Ex parte Torres*, 483 S.W.3d 35, 44–45 (Tex. Crim. App. 2016). It is not sufficient for counsel to advise appellant that he might be deported and recommend that he seek advice from an immigration lawyer. *Torres*, 483 S.W.3d at 45. When it is clear that being placed on deferred adjudication for the charged offense will result in removal proceedings,

---

[1]     Possession of cocaine would subject appellant to mandatory deportation. *See* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted or . . . any law or regulation of a State, The United States, or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of thirty grams or less of marijuana, is deportable.").

counsel's advice regarding those immigration consequences must be equally clear. *See Padilla*, 559 U.S. at 369.

In his application for writ of habeas corpus, appellant claimed that "he never learned that his guilty plea, even in exchange for a deferred adjudication, would make him both removable and inadmissible for immigration purposes." In an affidavit in support of his application, appellant stated that his defense counsel told him that "he was going to get me probation and also said that I was not going to be deported."

In contrast, appellant's defense counsel stated in an affidavit, "I advised [appellant] that anything other than a dismissal of his criminal case of possession of [a] controlled substance would cause his deportation, denial of citizenship, and not being allowed re-entry into the United States." Defense counsel's affidavit further stated:

> I had a detailed conversation with [appellant] in Spanish on more than one occasion where he confirmed to me, he was not a United States Citizen. My understanding that a non-citizen pleading guilty to a possession of controlled substance charge is a deportable offense. I advised [appellant] that he would be subject to deportation, he would be denied citizenship, and not be allowed re-entry into the United States.
>
> . . . .
>
> I explained to [appellant], as I do to all my clients, that any plea of guilty for the offense charged, specifically possession of controlled substance (PCS), would cause his deportation, denial of citizenship, and not being allowed re-entry to the United States. I explained that a deferred

7

adjudication is considered a conviction for immigration purposes and his plea of guilty would result in deportation, denial of citizenship, and not being allowed re-entry into the United States.

[Appellant] understood the consequences of his plea of guilty in exchange for deferred adjudication and the risk of deportation, denial of citizenship, and not being allowed re-entry into the United States.

It is my standard protocol to advise all my clients that are not United States citizens to consult with an immigration law attorney before pleading guilty to any criminal charge.

[Appellant] elected to accept the Assistant District Attorney's offer of a two (2) year deferred adjudication, knowing the risk of deportation, denial of citizenship, and not being allowed re-entry into the United States.

I did NOT advise [appellant] that he would NOT be deported. On the contrary, as per my protocol, I advised [appellant] he WOULD be deported, WOULD be denied citizenship, and WOULD NOT be allowed re-entry into the United States.

Given these conflicting versions of the immigration advice appellant received from defense counsel, the trial court did not abuse its discretion in finding defense counsel's affidavit credible. *See Ex parte Maldonado*, No. 05-19-01340-CR, 2020 WL 7585341, at *8 (Tex. App.—Dallas Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication) ("We are bound by the trial court's fact finding on [] credibility"). Given defense counsel's credible testimony that counsel advised appellant he would be deported, appellant cannot meet the first prong of *Strickland*. Therefore, the trial court properly denied habeas corpus relief based on trial counsel's alleged failure to comply with *Padilla*.

We overrule issue one.

***Ineffective Assistance—Failure to File Motion to Suppress***

Appellant's application for writ of habeas corpus also alleged that defense counsel was ineffective for failing "to fully investigate the facts and the law, identify a meritorious motion to suppress, and discuss these issue[s] with [appellant] resulting in the denial of his right to effective assistance of counsel." Specifically, appellant argues that "there is simply no reason to believe that [appellant] was a danger to himself or anyone else, a fact which raises a valid suppression issue." *See* TEX. PENAL CODE § 49.02(a) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another"); *Commander v. State*, 748 S.W.2d 270, 271 (Tex. App.— Houston [14th Dist.] 1988, no pet.) (holding that defendant arrested in driveway of residence not in public place or dangerous to self or others as required for public-intoxication arrest).

Appellant claims that when he was arrested, he "was not in the middle of the street, but that he was standing by his truck in a large parking area in front of his uncles [sic] house." Appellant argues that because he "was in the driveway to his residence, and not in the middle of the street, is just another reason that the evidence discovered pursuant to his arrest should have been suppressed." Essentially, he

9

contends that while standing in a private driveway he posed no danger to himself or the public, as required to support a conviction for public intoxication.

In support of his claim, appellant relies on his own affidavit, in which he alleges that he "was standing in the parking area in front of [his] uncle's house" when he was approached by police officers. Appellant also presented testimony from two witnesses, his uncle Alfonso Aguilar and Juan Barron, both of whom testified that appellant was not in the street when he was arrested and did not present a danger to himself or others.

In contrast, defense counsel submitted an affidavit, in which he stated, "I asked [appellant] if there were [] any witnesses to his initial contact with and subsequent detention and arrest by police," and that appellant "responded that there were no witnesses at the time of his encounter with police." Defense counsel described his investigation of the offense as follows:

> At the initial consultation as well as subsequent meetings, I asked [appellant] specific questions, in order to establish probable cause for his detention. Specifically, I asked [appellant] what he was doing immediately before his detention. [Appellant] replied, he was near his truck listening to music having a beer. I asked [appellant] where he was standing when police made initial contact with him. He responded he was in the street. I asked [appellant] if he had been drinking. He responded that yes, he had been drinking for several hours. I asked [appellant] if he was intoxicated, [appellant] replied yes. I asked [appellant] if he knew the reason for his arrest, [appellant] replied he was told by the police he was being arrested for public intoxication. I asked [appellant] if he was in possession of cocaine, [appellant] replied he was in fact. As per my protocol, during this initial conversation if

10

there were any witnesses to either his detention and arrest. He replied there were none.

* * * *

[Appellant] agreed to all the allegations and information presented in the offense report. [Appellant] agreed he was in the street when detained by police, he was intoxicated, he was in possession of cocaine, and he was detained and arrested at approximately 2:40 AM, November 14, 2009. The offense report indicated there were no witnesses. I asked [Appellant] if there were any witnesses. [Appellant] stated there were none.

* * * *

I did not obtain any evidence directly from the police in [appellant's] case. I believed [appellant] to be the most knowledgeable person regarding the facts surrounding his arrest. [Appellant's] acknowledgment and descriptions of the facts surrounding his detention and arrest corresponded to facts described in the offense report.

Because of the conflicting evidence presented to the trial court about whether appellant was standing in the street or a private parking lot at the time of his arrest, and about whether there were witnesses available at the time to corroborate appellant's claim that he was not standing in the street, the trial court did not abuse its discretion in finding defense counsel's affidavit credible. *See Maldonado*, 2020 WL 7585341, at *8 ("We are bound by the trial court's fact finding on [] credibility"). Given defense counsel's credible testimony that appellant told him that he was standing in the street and that there were no witnesses, the trial court properly denied habeas corpus relief based on defense counsel's alleged failure to file a motion to suppress evidence obtained because of appellant's warrantless arrest.

11

We overrule issue two.

## Conclusion

We affirm the trial court's order that denied appellant's post-conviction application for a writ of habeas corpus.

Terry Adams
Chief Justice

Panel consisting of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).